**No. 11-6044**

# In the United States Court of Appeals for the Tenth Circuit

———————————————

UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,

*v.*

ALICIA DANIELLE FREERKSEN, DEFENDANT-APPELLANT.

———————————————

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

THE HONORABLE DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

D.C. NO. CR-10-188-R

———————————————

**BRIEF OF PLAINTIFF-APPELLEE**
**ORAL ARGUMENT NOT REQUESTED**

———————————————

SANFORD C. COATS
United States Attorney

JONATHON E. BOATMAN
RANDAL A. SENGEL
BRANDON T. HALE
Assistant U.S. Attorneys
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
Telephone (405) 553-8700
Attorneys for Plaintiff-Appellee

# **Table of Contents**

**Page**

Statement of the Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      The child victim reports the sexual abuse.. . . . . . . . . . . . . . . . . . 3

II.     Detective Morton seeks a search warrant.. . . . . . . . . . . . . . . . . . 4

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      The district court properly denied the defendant's
        motion to suppress.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.      Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                1.      The defendant's argument.. . . . . . . . . . . . . . . . . . 7

                2.      The law.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                3.      Application to this case.. . . . . . . . . . . . . . . . . . . . 9

                4.      The defendant's arguments to the
                        contrary either misunderstand the
                        law or are beside the point.. . . . . . . . . . . . . . . . . 12

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

Certification of Digital Submissions. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Mailing and Electronic Service.. . . . . . . . . . . . . . . . . . . 17

Addendum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# Table of Authorities

**Page**

## Cases

*Anderson v. City of Bessemer City*,
  470 U.S. 564 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Illinois v. Gates*,
  462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jones v. United States*,
  362 U.S. 257 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stewart v. Donges*,
  915 F.2d 572 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . 10, 13-14

*United States v. Basham*,
  268 F.3d 1199 (10th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*United States v. Campbell*,
  603 F.3d 1218 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 7, 14-15

*United States v. Colkley*,
  899 F.2d 297 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*United States v. Couch*,
  367 F.3d 557 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Fooladi*,
  703 F.2d 180 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Garcia-Zambrano*,
  530 F.3d 1249 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*United States v. Gunter*, No. 2:06-CR-05,
    2006 WL 2336357 (E.D. Tenn. Aug. 10, 2006) . . . . . . . . . . . . . . . 11

*United States v. Kennedy*,
    131 F.3d 1371 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*United States v. Mathis*,
    357 F.3d 1200 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 10

## **<u>Statutes</u>**

18 U.S.C. § 2251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## **Prior or Related Appeals**

The defendant's husband and co-conspirator, Dean Leroy Freerksen, III, has appealed his conviction and sentence. It is pending as *United States v. Freerksen, III*, No. 11-6059 (10th Cir. 2011).

## **Statement of the Issue**

The defendant filed a motion asking the district court to suppress photographs discovered on a blue digital camera because, she claimed, the affiant failed to tell the issuing judge that the information in the affidavit about the camera came from hearsay.[1]  The district court denied the motion, holding that suppression was not required because the omission was immaterial to probable cause.  Was that conclusion correct?[*]

## **Statement of the Case**

On May 18, 2010, a grand jury charged the defendant and her husband, Dean Leroy Freerksen, III, with five counts of producing

---

[1]      The defendant complains about both false statements and omissions.  But the false statement—such as it is—deals with the length and color of a vibrator.  Since that has nothing to do with probable cause and certainly nothing to do with the seizure of the blue camera (which was the source of the pertinent evidence for the count of conviction, Docs. 57, 62), this response will focus on the omission portions of the defendant's arguments.

[*]      Joshua Lockett, a third-year law student at the University of Oklahoma College of Law and intern at the U.S. Attorney's Office, contributed significantly to the research and drafting of this brief.

1

child pornography in violation of 18 U.S.C. § 2251(a).  Doc. 1.[2]  Shortly

thereafter, she moved to suppress digital photographs stored on a blue

digital camera seized from her home.[3]  Doc. 31.  She argued for

suppression because the affiant, Detective Mike Morton, omitted from

his affidavit information the defendant believed was material to

probable cause.  *Id.* The United States opposed the motion.  Doc. 35.

On July 7, 2010, the district court held an evidentiary

hearing at which Detective Morton testified.  Doc. 50.  He conceded

that he omitted information from the affidavit, but insisted the

omission was inadvertent.  Supp. Hrg. Tr. at 44, 49-50.  Afterward, the

court issued a written order denying the defendant's motion because

---

[2]    Citations are to the document number listed on the district court docket and the page within the document where relevant, *i.e.*, "Doc. ___, at ___." References to the Suppression Hearing Transcript are designated as "Supp. Hrg. Tr. at ___." 10th Cir. R. 28.1(B).

[3]    She also moved to suppress evidence discovered on a computer seized during a later search.  Doc. 31.  But, as the district court found, all incriminating evidence found on the computer was also found in the camera. Doc. 54, at 10-11; Supp. Hrg. Tr. at 43.  Thus, so long as the seizure of the camera survives, the challenge to the computer is irrelevant.  Doc. 54, at 10. Therefore, this response will focus on her challenge to the blue digital camera.

Detective Morton's omissions were immaterial to probable cause.  Docs. 50, 54.

The defendant then entered into a conditional plea agreement to one count of possessing child pornography based on an image found on the blue digital camera.  Docs. 57, 62.  In that agreement, she reserved the right to appeal the denial of her motion to suppress.  Doc. 62, at 6.  After her sentencing, this appeal timely followed.  Doc. 92.

## <u>Statement of the Facts</u>

## I.     The child victim reports the sexual abuse.

On July 11, 2009, C.L.—an eleven-year-old girl—and Tina McVeigh, her mother, reported to the Clinton Police Department that C.L. had been raped in Woodward, Oklahoma.  Supp. Hrg. Tr. at 6-7.  The Clinton Police Department relayed that report to the Woodward Police Department.  *Id.* at 6.  And the case was referred to Detective Mike Morton for further investigation.  *Id.* at 4-5, 7, 9.

Later that day, Detective Morton interviewed the young girl and her mother.  *Id.* at 8.  C.L. told Detective Morton that, on June 26,

3

2009, three sixteen-year-old boys—one of whom was named "Garrett"—raped her. *Id.* at 7-11.

She also said that, on July 4, 2009, the defendant and Mr. Freerksen made her drink orange juice and vodka. *Id.* at 11. Afterward, she said, they played "sex dice" for about an hour. *Id.* at 16. C.L. reported that they then took her back to their bedroom, where Mr. Freerksen put his penis inside her while the defendant used a vibrator on herself. *Id.* at 17.

Two days after the interview, C.L.'s mother telephoned Detective Morton and said that, after the interview, C.L. remembered that the defendant and Mr. Freerksen had documented some of the sexual abuse with a blue digital camera. *Id.* at 13, 19-20. After that phone call, Detective Morton drafted a police report documenting his initial interview with C.L. and the follow-up telephone call from her mother. *Id.* at 14.

## II.    **Detective Morton seeks a search warrant.**

Shortly thereafter, Detective Morton applied for a search warrant. *Id.* at 14-15. In the supporting affidavit, he wrote that C.L.

4

said three males raped her.  Doc. 31, Att. 2.  He did not mention the

boys' ages.  *Id.*

He also explained C.L.'s account of the sexual assault by the

Freerksens, writing:

> 2.    C.L. stated that on July the 4th 2009 while
> at 2718 Maple Woodward Oklahoma.  C.L. stated
> Dean Freerksen gave her vodka, and orange juice
> to drink.  C.L. stated that they played sex dice for
> about an hour.
>
> 3.    C.L. told me Dean, Freerksen the third, and
> Alicia Freerksen took her to their bedroom.  C.L.
> stated that Dean put his penis inside her.
>
> 4.    C.L. stated that Alicia used a white vibrator
> about six inches long on her crotch area.
>
> 5.    C.L. stated Dean, and Alicia both took
> photos of her using a blue camera.

*Id.*  He did not include that the information regarding the blue digital

camera was relayed to him by C.L.'s mother, rather than coming

directly from C.L. herself (the "telephone-call omission").  *Id.*

Based on that affidavit, a state judge authorized the search

of the defendant's residence and the seizure of a blue digital camera.

Doc. 31, Att. 2.  Detective Morton then searched the home and seized,

among other things, a blue digital camera containing sexually explicit photographs of minors.[4]  *Id.*, Att. 3.  One of those photographs forms the basis for the defendant's plea.  Docs. 57, 62.

## Summary of the Argument

Although the defendant complains about many things, at bottom her appeal rests on one issue.  She insists that the court should have evaluated Detective Morton's telephone-call omission by completely *removing* from the affidavit all references to the blue digital camera and then seeing if the remaining affidavit supplied probable cause for the camera's seizure.  She misunderstands the law.

It requires just the opposite.  The district court must *insert* the omitted information into the affidavit and then see whether the affidavit would supply probable cause to seize the camera.  And that is exactly what the court did here—evaluate whether it would have undermined probable cause for the issuing judge to know that C.L.'s

---

[4]    Detective Morton did not view the images on the camera right away.  Instead, he secured a second search warrant giving him specific permission to access the images.  Supp. Hr. Tr. at 42.  The affidavit used to secure the second warrant was substantially similar to the first, although it noted that the camera had been seized during the initial search.  Doc. 31, Att. 5.

6

mother relayed the information about the blue digital camera, rather than it coming directly from C.L. herself.  Since that information would not undermine probable cause, the court properly denied the defendant's motion.

## **Argument**

I.     **The district court properly denied the defendant's motion to suppress.**

A.     **Standard of Review**

Whether a search-warrant affidavit—once purged of false information or invested with omitted information—supplies probable cause is a legal issue reviewed de novo.  *United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010).

B.     **Discussion**

1.     **The defendant's argument.**

The defendant says Detective Morton omitted or falsely stated four points in his affidavit: (1) that the three males who raped C.L. were sixteen years old; (2) that one of juveniles named "Garrett" was related to another officer; (3) that the defendant's vibrator was white and six inches long; and (4) that the information about the blue

7

digital camera was relayed to him by C.L.'s mother, rather than coming directly from the child herself. Aplt's Br. at 17-18. She assumes that, to remedy those alleged defects, the district court should have completely removed from the affidavit all reference to the blue digital camera. *Id.* at 17. With that information removed, she insists, the seizure of the camera was unconstitutional because nothing in the remaining affidavit would supply probable cause to support the seizure. *Id.* at 17-18.

### 2.  The law.

When an affiant includes false statements in or omits information from a search warrant affidavit, the district court must review for materiality. *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008). That is, the court must ask, "Was the information material to probable cause?" *United States v. Kennedy*, 131 F.3d 1371, 1377 (10th Cir. 1997). With omitted information, that inquiry is performed by imagining whether, if the information were *included*, probable cause would still exist. *Id.*; *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir. 2001). If the answer is no, the

search or seizure must fail.  *Garcia-Zambrano*, 530 F.3d at 1254.  If the

answer is yes, then the search or seizure must stand.  *Kennedy*, 131

F.3d at 1377.

### 3.    Application to this case.

Given that law, the district court correctly denied the

defendant's motion to suppress, for several reasons.

First, most of the defendant's complaints about the affidavit

are wholly irrelevant to whether probable cause existed to seize the

blue digital camera.  For example, whether the magistrate knew the

ages of the boys who raped C.L. had nothing to do with the Freerksens'

crimes in general or the blue camera in particular.  The same is true of

the family ties of one of the juvenile assailants and the exact length

and color of the defendant's vibrator.  Those are simply distractions to

the true issue: the source of the information about the blue digital

camera.  *See Basham*, 268 F.3d at 1204 (information unrelated to

probable cause is irrelevant to the *Franks* inquiry); *United States v.*

*Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) ("Omitted information that is

potentially relevant but not dispositive is not enough to warrant a *Franks* hearing.").

Everyone agrees that Detective Morton omitted from his affidavit that the information about blue digital camera came through C.L.'s mother, not directly from C.L. herself. In fact, when questioned at the suppression hearing, Detective Morton conceded that point. Supp. Hrg. Tr. at 18-19. And no one seems to challenge the mother's credibility. *Id.* at 41, 59. So the only question is this: if Detective Morton had clarified in his affidavit that C.L. told her mother about the blue camera and that her mother then relayed that information to Detective Morton, would probable cause still exist? *Stewart v. Donges*, 915 F.2d 572, 582 n.13 (10th Cir. 1990).

It unquestionably would. That is because reliable hearsay can support the issuance of a search warrant. *Jones v. United States*, 362 U.S. 257, 270 (1960). Indeed, this Court has repeatedly held that even "multiple layers of hearsay may form the basis of a finding of probable cause," so long as the hearsay is reliable. *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004).

10

The hearsay here would fit squarely within those rules for several reasons.  First, officers are entitled to rely—without significant corroboration—on information relayed to them by average citizens (*i.e.*, not criminal cooperators).  *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir. 1983).  As the guardian of a child rape victim, C.L.'s mother certainly fell within that category of presumed-reliable informants.

Moreover, Ms. McVeigh's description of her daughter's account gave detail about the color and kind of camera used to document the abuse.  That kind of detail made the hearsay more reliable.  *Illinois v. Gates*, 462 U.S. 213, 234 (1983) (explaining that detailed descriptions by an informant are more reliable).

Further, even though multiple layers of hearsay can supply probable cause, here there is only one: a child victim's statement to her mother.  That too made it more reliable.  *See United States v. Gunter*, No. 2:06-CR-05, 2006 WL 2336357, at *5 (E.D. Tenn. Aug. 10, 2006) (finding high level of reliability when there were "but two layers of hearsay").

11

Ms. McVeigh's information was also entitled to a greater presumption of reliability because she was not an anonymous informer—she was known to Detective Morton and could potentially be held accountable for providing false information. *United States v. Couch*, 367 F.3d 557, 560-61 (6th Cir. 2004).

Finally, at the suppression hearing, both Detective Morton and the defendant's own expert testified that there would be no reason to doubt Ms. McVeigh's credibility. Supp. Hrg. Tr. at 41, 59.

For those combined reasons, the district court correctly concluded that including the telephone-call omission in the affidavit would not have undermined probable cause. The court's ruling, therefore, should stand.

### 4.   **The defendant's arguments to the contrary either misunderstand the law or are beside the point.**

The defendant raises three arguments trying to escape that result. All are unpersuasive.

First, she insists that the district court should have analyzed Detective Morton's omissions by completely removing from

12

the affidavit all information about the blue digital camera. Aplt's Br. at

17-18. As shown above, however, that is simply not the law. *Stewart*,

915 F.2d at 582 n.13.

Second, she suggests that C.L. must have been lying about

the blue camera because, at one point very early in her initial interview

with Detective Morton, C.L. indicated that it was dark in the room in

which she was abused. Aplt's Br. at 17. The defendant makes too

much of too little. It was obviously not so dark in the room that C.L.

was unable to see her abuse—she described it in vivid detail to

Detective Morton (including, for example, vivid descriptions of Mr.

Freerksen ejaculating on her body). Supp. Hrg. Tr. at 38-39 (Detective

Morton explaining that, even though C.L. said it was dark, she was

able to describe her sexual abuse in detail); Aplt's Supp. Hrg. Ex. 2

(included in attached Addendum) (C.L.'s written statement explaining

the sexual abuse in some detail). Indeed, the district court—after

listening to a full recording of C.L.'s interview—found that it was not so

dark in the room that C.L. could not observe and describe her abuse in

13

detail.  Doc. 54, at 9.[5]  Given that record, it is simply wrong to suggest that Detective Morton should have disbelieved the blue camera information based on the alleged darkness of the room.

Finally, the defendant spends considerable time attacking Detective Morton's credibility.  Aplt's Br. at 17.  But that is beside the point.  The district court assumed—as does the government here—that Detective Morton intentionally omitted that the blue-camera information came from C.L.'s mother.[6]  Supp. Hrg. Tr. at 41; Doc. 54, at 9.  Still, Detective Morton's credibility has nothing to do with how to remedy that omission, *i.e.*, whether probable cause would have existed with the omitted information included.  *Stewart*, 915 F.2d at 582 n.13.

In any event, to the extent his credibility as a *witness* was relevant, the district court would certainly be in the best position to judge that issue.  *United States v. Campbell*, 603 F.3d 1218, 1228 (10th

---

[5]      That is likely because "dark" need not mean the entire absence of light, making it impossible to see.  Instead, "dark" often means "***partly*** without light."  Webster's New Universal Unabridged Dictionary 461 (2d ed. 1983) (emphasis added).

[6]      This is a conservative assumption, as significant testimony supports the notion that Detective Morton did not intentionally omit this information.  *See, e.g.*, Supp. Hrg. Tr. at 41.

14

Cir. 2010).  Here, the district court heard Detective Morton's live testimony and suggested that he was one of the most truthful witnesses the Court had ever seen.  Supp. Hrg. Tr. at 64 (court rhetorically asking defense counsel, "Let me ask you this:  Have you ever known a more truthful witness on the witness stand than he was?").  That judgment—to the extent it is relevant here—should not be lightly cast aside.  *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (stating that a district court's credibility determinations are virtually unreviewable on appeal).

## <u>Conclusion</u>

For those reasons, this Court should affirm the district

court's denial of the defendant's motion to suppress.

Respectfully submitted,

SANFORD C. COATS
United States Attorney

<u>s/ JONATHON E. BOATMAN</u>
RANDAL A. SENGEL
BRANDON T. HALE
Assistant U.S. Attorneys
Bar Number: 20160
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma  73102
(405) 553-8700
Jeb.Boatman@usdoj.gov

## Certification of Digital Submissions

I certify that all required privacy redactions have been made, and, with the exception of those redactions, every document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the Clerk.

I also certify that the digital submissions have been scanned for viruses with the most recent version of a commercial virus-scanning program, Trend Micro OfficeScan, Version 8.0, which is updated daily. I further certify that according to the commercial virus-scanning program, these digital submissions are free of viruses.

s/ JONATHON E. BOATMAN
Assistant U.S. Attorney

## Certificate of Mailing and Electronic Service

This is to certify that on August 4, 2011, I electronically transmitted the attached document to the Clerk of Court using the CM/ECF System for filing and to the following ECF registrant: Teresa Kay Brown.

s/ JONATHON E. BOATMAN
Assistant U.S. Attorney

# **Addendum**

1.   Appellant's Suppression Hearing Exibit 2[*]

---

[*]      The United States has redacted the child-victim's name from the top and bottom of this exhibit.  Teresa Brown, counsel for the defendant-appellant, has authorized me to state that she has no objection to these additional redactions.  The telephone-number redaction appears on the original.



*Harvey Rutherford*
*Chief of Police*

# WOODWARD POLICE DEPARTMENT
ORI: OK0770100
1220 9th Street, Woodward, OK 73801
Switchboard: (580) 254-8518

Tony Alexander
Captain

| Date: 07-11-09 | Time: 2330 | Case No.: 0709-1347 |
| --- | --- | --- |
| | | ☐ Continuation |

Please complete the following information:

Last Name: ▓▓▓▓▓▓▓   First Name: ▓▓▓▓▓▓▓   Middle Name: ▓▓▓▓▓▓▓

Date of Birth: 4/16/98   Soc. Sec. No.:   Drivers License No./State: Choctaw

Mailing Address: 524 Seikel   Home Phone No.: 405-308-▓▓▓

Occupation/Place of Employment/Address/Phone:

I have been advised of and understand my miranda rights, and willingly make this statement.

I went to stay at my uncle's
house fore a while and
the weekend before 4
of Julie and this boy named
gar te stuke his winner inside
my crotch and t hert
and my uncle and my aunt
were making me drink and
4 of July my uncle
made me drinc and
my aunt and uncle made
me play sex dise with
them and 1 hour after
they caryed me to there
bedroom and my aunt stuk
a facke wenner in
my crotch and my uncle stuke

I have read this statement consisting of _2_ page(s) and the facts contained therein are true and correct.

BY SIGNING THIS LEGAL DOCUMENT, I ACKNOWLEDGE:
1) MY INTENT TO COOPERATE WITH LAW ENFORCEMENT AND PROSECUTING AUTHORITIES IN THE INVESTIGATION
AND PROSECUTION OF THE CRIME WHICH I AM REPORTING;
2) THAT I HAVE MADE THIS STATEMENT OF MY OWN FREE WILL, WITHOUT THREAT OR COERSION;
3) THAT I UNDERSTAND THAT IT IS UNLAWFUL TO FALSELY REPORT A CRIME.

▓▓▓▓▓▓▓▓▓▓   *Damon Tarrant*

Signature of Person Giving Voluntary Statement    Officer/Witness

FRE - 083

Harvey Rutherford,
Chief of Police

# WOODWARD POLICE DEPARTMENT
ORI: OK0770100
1226 9th Street, Woodward, OK. 73801
Switchboard: (580) 254-8516

Tony Alexander
Captain

| Date: 07/11/09 | Time: 2330 | Case No.: 0709-1347 |
| --- | --- | --- |
| | | ☑ Continuation |

Please complete the following information:

Last Name: ▓▓▓▓▓▓    First Name: ▓▓▓▓▓▓    Middle Name:

Date of Birth:    Soc. Sec. No.:    Drivers License No./State:

Mailing Address:    Home Phone No.:

Occupation/Place of Employment/Address/Phone:

I have been advised of and understand my miranda rights, and willingly make this statement.

his wiener in my crotch
6 times and wite stuff came
out 8 times inside of me
and all over me and the
same day that garite had
sex with me two other
boy's had sex with me
and they took tern's they
only did it wonse and
then i left with my mom's
best frinde and i got
to go to the lake house
and had to go to the hospitle
and i had herpes.

I have read this statement consisting of __2__ page(s) and the facts contained therein are true and correct.

BY SIGNING THIS LEGAL DOCUMENT, I ACKNOWLEDGE:
1) MY INTENT TO COOPERATE WITH LAW ENFORCEMENT AND PROSECUTING AUTHORITIES IN THE INVESTIGATION
AND PROSECUTION OF THE CRIME WHICH I AM REPORTING;
2) THAT I HAVE MADE THIS STATEMENT OF MY OWN FREE WILL, WITHOUT THREAT OR COERSION;
3) THAT I UNDERSTAND THAT IT IS UNLAWFUL TO FALSELY REPORT A CRIME.



Signature of Person Giving Voluntary Statement          Officer/Witness

FRE - 084